### LIZZIE ROBINSON v. THE STATE.

#### No. 2400. Decided April 16, 1913.

**1.—Assault to Murder—Evidence—Impeaching Witness.**

Where the principal State's witness testified that she did not know whether she had been indicted for a felony within the last two or three years and did not remember whether she had been 'indicted as a common prostitute, the court should have permitted defendant to introduce the indictments showing that she had been so indicted.

**2.—Same—Charge of Court—Adequate Cause.**

Where, upon trial of murder, the court did not define what constituted adequate cause, the question of intent to kill having been raised by the evidence, the same was reversible error.

**3.—Same—Charge of Court—Aggravated Assault.**

Where, upon trial of assault to murder, it was a serious question from the evidence whether defendant had an intent to kill or whether it was simply aggravated assault, the court should have submitted these matters properly to the jury.

Appeal from the District Court of Tom Green. Tried below before the Hon. J. W. Timmins.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. A. Anderson* and *Bell & Upton,* for appellant.—On the question of the court's failure to instruct on adequate cause: Gilespie v. State, 53 Texas Crim. Rep., 167.

On question of refusal to admit indictments to impeach State's witness: Branch Crim. Law, sec. 868.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of court's charge on aggravated assault: Foster v. State, 51 Texas Crim. Rep., 77.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of assault to murder, her punishment being assessed at two years confinement in the penitentiary.

There were two theories about this case. The State's case was substantially that appellant found Louise Booker, the alleged assaulted party, in a restaurant, called her out, remarking to her that she wanted to see her. As Louise Booker walked out of the door appellant began cutting her and she called for help. The wound was inflicted with a pocket-knife, the blade of which was about two inches long. Booker was cut twice in the left shoulder, and one of her fingers was also cut. Dr. DeLong attended her and his testimony shows that he found on her three wounds, one on the finger and two on the arm or shoulder. These wounds were something like an inch and a half or two inches deep, and about an inch or two in width or length; they were not very long. "It seemed that the knife was just stuck in." He says: "I believe one of the wounds was just below the point of the shoulder." The witness Booker says she did not have any words with appellant; that appellant remarked: "You God damned bitch, I am going to kill you." She says there had never been any trouble between her and appellant prior to that time. She further testified on cross-examination that Lizzie Robinson did not call her out of the restaurant and ask her why she had caused the officers to go down to her house, and she further testified she did not call appellant a damned lieing-bitch, and did not strike her. This is practically the State's case. The sheriff, Allen, testified he had known Louise Booker about a year; she had had several fights and had been arrested a lot of times; that he had also known defendant, and this was the only trouble he ever knew of her having. Louise Booker denied having been indicted or prosecuted or paying any fines within the last two years for being a common prostitute, or vagrant, and did not remember she had been indicted twice within the last three or four years and had secured the services of Mr. Upton to defend her. The defendant then offered in evidence two indictments against Louise Booker, which were objected to by the State, and the objection sustained. Appellant testified she had on the evening mentioned been to a show, and that Mr. Cunningham came and knocked on her door, and said he had heard somebody was gambling in her house, and he was going to have her up before the grand jury. She says she then went up to the restaurant to get something to eat and found Louise Booker in the restaurant and asked her why she sent the officers to her house. Louise Booker replied, "You lieing-bitch," and slapped her, and they went to fighting. Appellant says she had a knife; it was not open at the time. When Louise Booker slapped her she clinched her and hit her (appellant) with her fists. "I was not trying to kill her that night, and did not know she was in the restaurant until I went in." She says she did not want to kill her, and did not know how many times she had cut her; that she opened her knife with her teeth after the witness Booker had "clinched" her. She was not able to give a definite description of the knife, but the knife was shown to be a pocket-knife with a blade about two inches long. This does not seem to be controverted. Appellant's testimony is sustained substantially by the witness

Love. Branch was offered as a witness, and testified he was justice of the peace, and knew the witness Booker, and had known her for two years; he gave her a bad reputation for truth and veracity. Defendant also offered to prove by this witness that Louise Booker had pleaded guilty and paid fines in the Justice Court for vagrancy within two years. This testimony was not permitted to go to the jury on objection by the district attorney. The witness Cunningham testified he was deputy marshal; he gave Louise Booker a bad name; he says she was the most boisterous negro they "ever had down there"; that he remembered the night of the difficulty between Louise Booker and appellant; that Louise Booker had given him information that caused him to go to Lizzie Robinson's house to look for parties said to be gambling, but failed to find any gambling at appellant's house. Despain testified also for the defendant as to the bad reputation for truth and veracity as well as the reputation of the witness Booker for being a quiet and peaceable citizen. He said it was bad in both respects. This is the substance of the case.

A bill of exceptions recites that after the witness Louise Booker had testified she did not know whether she had been indicted for a felony within the last two or three years, and after the State rested its case, the defendant offered in evidence the original indictment in cause No. 1799 in the District Court of Tom Green County, Texas, styled The State of Texas v. Louise Booker. The bill then sets out a certified copy of the indictment showing that she had been charged with theft from the person of one Juan Perez. This evidence was rejected, that is, it was not permitted to go before the jury on objection by the State. While the purpose for which this evidence was offered is not stated, we are of the opinion its purpose was obvious, and under the authorities if the purpose is obvious the bill should be considered. What effect this may have had on the jury we are unable to say, but it was admissible testimony as impeachment for two reasons: First, it was an indictment for a felony, the indictment having been preferred at the December term, 1910, of the District Court, and, therefore, was not too remote to be used as impeaching testimony, and, second, to impeach her on the statement that she had not been indicted, or if she had she did not recollect it.

There is another question suggested for reversal, based upon the supposed defect in the court's charge. The court charged the jury that if they were satisfied from the evidence beyond a reasonable doubt that said assault was not made under the immediate influence of sudden passion produced by an adequate cause, as the same is hereinafter explained, then they will find the defendant "guilty of assault with an attempt to murder," and that said charge nowhere defines nor explains to the jury the meaning of, or what may constitute adequate cause. The court nowhere defines what it takes to constitute adequate cause. We are of opinion that this part of the court's charge is error. The issue was in the case as to who was the real attacking party, and it was also a question made by the evidence as to the purpose and intent of

appellant in using the knife. The circumstances made by the two conflicting issues were wide apart and appellant was entitled to have a favorable charge on her side of the case. Had this been given, the jury may not have found her guilty of a higher offense than aggravated assault. It is a very serious question as to whether assault with intent to murder was committed, therefore the court should have instructed very fully with reference to these matters. 'The jury allotted appellant a term in the penitentiary. The writer does not believe the evidence raises the assault to the dignity of one that was committed with intent to murder.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*